# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 14, 2015 Session

# CINDY A. TINNEL v. EAST TENNESSEE EAR, NOSE, AND THROAT SPECIALISTS, P.C. ET. AL.

### Appeal from the Circuit Court for Anderson County
### No. B2LA0116    Hon. William Everett Lantrip, Chancellor[1]

---

### No. E2014-00906-COA-R3-CV-FILED-FEBRUARY 25, 2015

---

This is a medical malpractice[2] action.  Plaintiff filed a complaint after sending pre-suit notices to Defendants.  After voluntarily dismissing the complaint, Plaintiff filed a second set of pre-suit notices before re-filing the complaint.  The pre-suit notices were filed within one year of the voluntary dismissal.  Defendants moved for summary judgment, alleging that the re-filed complaint was untimely because it was not filed within one year of the dismissal pursuant to the saving statute.  Plaintiff responded that the re-filed complaint was timely because the pre-suit notices entitled her to a 120-day extension of the saving statute pursuant to Tennessee Code Annotated section 29-26-121(c).  The trial court dismissed the action.  Plaintiff appeals.  We reverse the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

---

[1]Sitting by interchange.

[2]Tennessee Code Annotated section 29-26-101 now defines most all cases occurring in a medical context as "health care liability actions."  The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based."  *See* Acts 2011, ch. 510, § 8.  Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code.  *See* Acts 2012, ch. 798.  The provisions of the revised statute do not apply to this action.

D. Scott Hurley and Ryan N. Shamblin, Knoxville, Tennessee, for the appellant, Cindy A. Tinnel.

James H. London, Mark A. Castleberry, and J. David Watkins, Knoxville, Tennessee, for the appellees, East Tennessee Ear, Nose, and Throat Specialists, P.C. and Richard L. Schultz, M.D.

**OPINION**

**I. BACKGROUND**

On February 3, 2009, Cindy A. Tinnel ("Plaintiff") was admitted to the Advanced Family Surgery Center in Oak Ridge, Tennessee for an out-patient procedure involving the removal of a nasal polyp by Richard L. Schultz, M.D. Complications arose during the surgery that caused increased pressure and bleeding behind her left eye. After Plaintiff began vomiting blood following the surgery, she was transferred to Methodist Medical Center of Oak Ridge for emergency decompression surgery to reduce the pressure and stop the bleeding. Dr. Schultz stopped the bleeding, but Plaintiff suffered permanent blindness in her left eye as a result of the complications.

Plaintiff has filed two complaints against Dr. Schultz and his practice, East Tennessee Ear, Nose, and Throat Specialists, P.C. (collectively "Defendants"). In each complaint, Plaintiff alleged that Dr. Schultz was negligent in diagnosing her prior to the procedure, in performing the procedure, and in caring for her following the procedure and that his negligence resulted in her blindness.

On May 19, 2009, prior to filing her first complaint ("Lawsuit 1"), Plaintiff provided the statutorily required 60-day pre-suit notice to each defendant pursuant to the Tennessee Medical Malpractice Act ("the Act").[3] *See* Tenn. Code Ann. § 29-26-121(a). Plaintiff then filed Lawsuit 1 on February 3, 2010, within the applicable one-year statute of limitations. The parties underwent extensive discovery and participated in numerous depositions before Plaintiff voluntarily dismissed Lawsuit 1 on December 14, 2010.

On October 18, 2011, prior to filing her second complaint ("Lawsuit 2"), Plaintiff again provided pre-suit notice to each defendant in compliance with the statutory changes to the Act. Plaintiff then filed Lawsuit 2 on April 3, 2012, more than one year from the date of

---

[3]During the pendency of the action, the General Assembly enacted statutory changes to the Act, setting forth new requirements for medical malpractice actions filed on or after July 1, 2009. Tenn. Code Ann. §§ 29-26-121(a), -122.

voluntary dismissal but within 120 days of the one-year anniversary of the dismissal. Defendants moved for the summary judgment dismissal of Lawsuit 2, alleging that Plaintiff failed to file Lawsuit 2 within one year of the dismissal of Lawsuit 1 pursuant to the saving statute, which provides, in pertinent part,

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest. . . .

Tenn. Code Ann. § 28-1-105(a). Plaintiff argued that she was entitled to a 120-day extension of the saving statute pursuant to the Act, which provides, in pertinent part

> When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. . . .

Tenn. Code Ann. § 29-26-121(c). Defendants asserted that Plaintiff was not entitled to the extension provided for in the Act because Lawsuit 2 was filed pursuant to the saving statute. The proceedings were indefinitely stayed in order to "allow the Tennessee Supreme Court sufficient time to address a recent split of authority . . . regarding the interplay" between the Act and the saving statute.

As anticipated by the trial court, the Supreme Court issued an opinion in *Rajvongs v. Wright*, 432 S.W.3d 808 (Tenn. 2013). In *Rajvongs*, the plaintiff filed his initial suit prior to the enactment of the notice provisions in the Act. 432 S.W.3d at 809-10. Following the trial court's entry of a voluntary dismissal, the plaintiff filed pre-suit notice within one year. *Id.* The plaintiff then filed his second complaint beyond the expiration of the saving period but within 120 days of the one-year anniversary of the dismissal. *Id.* The defendant moved for summary judgment. *Id.* at 810. The trial court denied the motion but granted permission to file an interlocutory appeal. *Id.* A panel of this court granted the application but affirmed the trial court's denial of the motion for summary judgment. *Id.* In affirming the denial of the motion for summary judgment, the Supreme Court stated,

> The Act contains no language explicitly addressing the refiling of nonsuited health care liability action, nor does it contain any language that can be fairly

construed as amending the saving statute. Tenn. Code Ann. § 28-1-105. A careful review of the Act and its subsequent amendments confirms that the requirements and procedures for refiling nonsuited health care liability cases are unchanged.

In *Myers v. AMISUB*, [382 S.W.3d 300 (Tenn. 2012),] however, we were asked to consider whether the pre-suit notice requirement applied to a transitional plaintiff. Mr. Myers, like Mr. Rajvongs, filed his original health care liability action prior to the effective date of section 29-26-121. *Myers*, 382 S.W.3d at 304. Mr. Myers timely refiled his action within the one-year saving statute and after the effective date of section 29-26-121. *Myers*, 382 S.W.3d at 304. Mr. Myers, however, did not give pre-suit notice to his health care providers. *Myers*, 382 S.W.3d at 304. Interpreting the statute using our ordinary canons of construction, we examined the language of section 29-26-121 and determined that the General Assembly did not exempt transitional plaintiffs from complying with the newly enacted pre-suit notice requirement although no notice was required before the original complaint was filed. *Myers*, 382 S.W.3d at 308-09. We were not, however, asked to consider the 120-day extension granted by subsection (c) or its "applicable statutes of limitations or repose" language. *See* Tenn. Code Ann. § 29-26-121(c).

We have long recognized that the saving statute is not a statute of limitations or a statute of repose and that it operates independently. *See Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 737 (Tenn. 2013) (recognizing that the statute of repose had been "harmonized" with the saving statute) (citing [*Cronin v. Howe*, 906 S.W.2d 910, 914-15 (Tenn. 1995)]; *Sharp v. Richardson*, 937 S.W.2d 846, 848 (Tenn. 1996) (noting that the saving statute permits the refiling of a health care liability action even if the refiling occurs beyond the three-year statute of repose). However, a transitional plaintiff is not necessarily precluded from receiving the 120-day extension simply because section 29-26-121(c) makes no explicit reference to the saving statute.

Clearly, the General Assembly enacted the 120-day extension to offset the obligation to give pre-suit notice at least 60 days prior to filing a complaint. In *Myers*, we properly interpreted the plain language of the statute as requiring transitional plaintiffs to give notice before refiling a nonsuited action because the defendants have never been provided with the notice that is contemplated under the Act. *Myers*, 382 S.W.3d at 309-10. We are unable to conclude that the General Assembly would require transitional plaintiffs to provide pre-suit

notice before refiling under the saving statute and yet deprive such plaintiffs of the 120-day extension. Considering the statutory scheme in its entirety, we can only conclude that a transitional plaintiff who properly provides pre-suit notice is entitled to the same procedural benefits that section 29-26-121(c) makes available to a plaintiff filing an initial health care liability complaint.

*Id.* at 813-14.

Following the court's decision in *Rajvongs*, Defendants argued that its case was distinguishable because Plaintiff was not a transitional plaintiff. Citing *Foster v. Chiles*, E2012-1780-COA-R3-CV, 2013 WL 3306594, at *5 (Tenn. Ct. App. March 5, 2013), *rev'd*, — S.W.3d —, 2015 WL 343872 (Tenn. Jan. 27, 2015),[4] Defendants claimed that Plaintiff should have simply filed Lawsuit 2 within the one-year period set forth in the saving statute because she was not required to provide pre-suit notice before re-filing her complaint. Defendants also asserted that Plaintiff had already availed herself of the 120-day extension provided in section 29-26-121(c). Plaintiff responded that the Court unambiguously held that the 120-day extension provided in section 29-26-121(c) was applicable to cases filed pursuant to the saving statute. Plaintiff acknowledged that the holding was limited but argued that the Court simply addressed the issue brought before it, namely whether transitional plaintiffs were entitled to the use of the extension. Plaintiff opined that the logic and reasoning employed by the Court provided strong persuasive authority on the issue relative to non-transitional plaintiffs. Plaintiff noted that she had not yet availed herself of the 120-day extension because Lawsuit 1 was filed within one year from the accrual of her cause of action.

The trial court granted the motion for summary judgment and dismissed Lawsuit 2 based upon the belief that granting the motion would "more readily expedite the appellate review process." This timely appeal followed.

## II. ISSUE

We consolidate and restate the issue raised on appeal by Plaintiff as follows:

Whether the 120-day extension provided in Tennessee Code Annotated section 29-26-121(c) extends the re-filing period in the saving statute for a plaintiff who provided pre-suit notice prior to filing the initial complaint.

---

[4]At that time, permission to appeal had been granted, but the Supreme Court had not issued a decision.

### III. STANDARD OF REVIEW

This action was initiated in April 2012; therefore, the dispositive summary judgment motion is governed by Tennessee Code Annotated section 20-16-101, which provides,

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
>
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

A trial court's decision to grant a motion for summary judgment presents a question of law, which we review de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 417 (Tenn. 1997). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

This action also presents a matter of statutory interpretation, which is reviewable as a matter of law pursuant to the de novo standard without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The primary objective of statutory interpretation is to carry out the legislative intent without broadening or restricting a statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In Re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151

S.W.3d 503, 507 (Tenn. 2004). We also presume that the General Assembly was aware of the state of the law when the statutes were enacted and that it did not intend to enact a useless statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010).

## IV. DISCUSSION

Plaintiff argues that the decision in *Rajvongs* provides strong persuasive authority to support her position that the 120-day extension provided in Tennessee Code Annotated section 29-26-121(c) is applicable to cases filed pursuant to the saving statute even though she provided pre-suit notice prior to filing the initial complaint. Defendants maintain that the holding was limited to transitional plaintiffs. Defendants also opine that Plaintiff cannot utilize another 120-day extension because she automatically received the extension when she filed the initial complaint. Plaintiff asserts that she did not utilize the extension because the initial complaint was filed within the applicable statute of limitations.

Following oral arguments in this case, the Supreme Court issued an opinion in *Foster*. In *Foster*, the Fosters filed pre-suit notice before filing the initial complaint. 2015 WL 343872, at *1. Following the entry of a voluntary dismissal, the Fosters re-filed the complaint without providing pre-suit notice. *Id.* The defendants moved for dismissal with prejudice, arguing that the Act "requires pre-suit notice to be given each time a complaint alleging health care liability is filed." *Id.* at *2. The Fosters responded that the "original notice was sufficient for any subsequently filed complaints." *Id.* The trial court dismissed the complaint with prejudice, and a panel of this court reversed. *Id.* In reversing this court and reinstating the dismissal, the Supreme Court stated,

> When the Fosters first gave pre-suit notice on November 18, 2010, Defendants, knowing that a lawsuit was forthcoming, had the opportunity to investigate the claim and pursue settlement negotiations as contemplated by the notice statute. Suit was filed on March 17, 2011, but dismissed on May 6, 2011. As of the dismissal of the suit, there was no pending litigation between the parties. Eighteen months after the Fosters first gave Defendants notice of the original suit, and nearly a year after the suit's dismissal, the Fosters sued Defendants again. The second filing was the institution of a new and independent action. *Myers*, 382 S.W.3d at 309. Defendants had no advance notice of the second suit, no chance to investigate the claim, and no opportunity to pursue settlement negotiations before the suit was filed. This was not the result intended by the Legislature in enacting § 29-26-121(a)(1).
>
> Although the March 2011 and May 2012 complaints asserted the same claims and involved the same parties, Defendants were statutorily entitled to separate

notice of each forthcoming complaint so that they might evaluate the merits of the claim and pursue settlement. To hold otherwise would be to ignore the clear and unambiguous language of § 29-26-121(a)(1) and to thwart the intent of the Legislature. We do not favor procedural dismissals, but we are unwilling to engage in a strained interpretation of the statute to reach a desired result. The Fosters could easily have avoided the delay caused by the dismissal of their complaint had they simply complied with the statute and given Defendants pre-suit notice.

We hold that Tenn. Code Ann. §29-26-121(a)(1) requires that plaintiffs provide pre-suit notice to prospective health care defendants each time a complaint is filed. Because the Fosters did not provide Defendants with notice that they intended to recommence their health care liability action, the Fosters failed to comply with § 29-26-121(a)(1).

*Id.* at *3-4 (footnote omitted).

The plaintiff in this case provided pre-suit notice to Defendants before filing each complaint as required by the Act. Like the Supreme Court reasoned in *Rajvongs*, we are unable to conclude that the General Assembly would require plaintiffs to provide pre-suit notice before refiling under the saving statute and yet deprive them of the 120-day extension. 432 S.W.3d at 814; *see also*, *Cannon ex rel. Good v. Reddy*, 428 S.W.3d 795, 799 (Tenn. 2014) (holding that the transitional plaintiff was entitled to the 120-day extension of the saving statute). We hold that Plaintiff was entitled to the 120-day extension provided for in section 29-26-121(c) because she provided Defendants with pre-suit notice that she intended to recommence her action. In so holding, we reject Defendants' argument that Plaintiff was only entitled to the use of one extension. Plaintiff's re-filed complaint was a new and independent action. *Foster*, 2015 WL 343872, at *4 (citing *Myers*, 382 S.W.3d at 309). Accordingly, the trial court erred in dismissing the re-filed complaint as untimely.

## V. CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs of the appeal are taxed equally to the appellees, East Tennessee Ear, Nose, and Throat Specialists, P.C. and Richard L. Schultz, M.D.

_____
JOHN W. McCLARTY, JUDGE

-8-